sitting with my colleague Judge Dana Douglas today, and we are both very pleased to welcome Judge Wendy Vetter from the Eastern District of Louisiana, who is sitting with the Fifth Circuit for the first time by designation, and so we're glad y'all are here with us today as well. The first case, we have two cases on the docket this morning, the first one is number 23-10194, the United States of America v. White, counsel. Morning judges. My name is Blake Burns, I'm here on behalf of Mr. Leroy White, and we are here this morning Mr. White's sentencing guidelines were artificially inflated by uncharged conduct, in this case an attempted murder, when he pled guilty to only felon with a firearm. Now in this case, there's been a surprising amount of fighting over the facts for something that was completely or almost completely captured on video, but I still think that the standard of review in this case is de novo, because if you want to let the government cherry pick any facts they want, even the ones that aren't true, and draw conclusions, whatever they want from those, and completely disbelieve everything I've argued, the base level offense in this case still comes back to level 14, and you can get there in one of two ways. Number one, Mr. White was a felon in possession of a firearm, and at the time of his possession he was a prohibited person, that gets him to level 14. Now number two, is the scenario where you let the government argue that, and I'm not conceding this, but just in arguendo, that he did have the specific intent to kill in this case, that still only shows an attempted manslaughter. Federal manslaughter being committed by a voluntary killing that arose from a sudden quarrel, and I don't know what's more of a sudden quarrel than four guys who don't really know each other very well, getting in an argument at a bar over a dress code violation, and the fight getting out of hand. That is a sudden quarrel, and no one was killed, so it could only be attempted manslaughter, which the guidelines say, in an attempted manslaughter case, you use the regular aggravated assault guidelines, which would be base offense level 14. So for that reason, I think the standard of review in this case is de novo, because it doesn't matter what the facts are, we're only arguing that they applied the wrong guideline in this case, regardless of which version of the facts are used. Counsel, are you, is it your argument that the district court applied the wrong guideline because it used uncharged conduct? Yes, Your Honor. What is your basis for saying that a district court in sentencing, and I am that, may not use uncharged conduct? Give me the authority for that. Well, there's no authority that says they can't use the uncharged conduct. We're saying that they were using, it was an incorrect conclusion to draw from the facts in this case, that this was an attempted murder. All right, let me hear that again. So you are not saying that the district court cannot use uncharged conduct. You concede that uncharged conduct is appropriate to be used in sentencing? I will concede that the current state of the case law does provide for that, yes, Your Honor. Okay. Now, I think we're also here because the court never addressed a couple of different issues that we raised. Number one, the manslaughter. Number two, the specific intent to kill in this case, or our self-defense issue that we have raised. Now the trial court, or the sentencing court, did say that he does not think that we showed that Mr. White was justified in this case. And I don't think that constitutes a ruling on our self-defense claim because number one, it's vague. He's saying he's not justified. Well, in what respect? The court doesn't say. This was a possession with a felon on a firearm case, which does not have a self-defense available, so it's reasonable he could have been saying Mr. White did not have the necessity defense that would allow him to carry the firearm. Number two, he's applying, if he was discussing the self-defense issue, he's applying the wrong standard of proof because he says we didn't show that he was justified. We only had to meet the burden of production, and at that point, the government has to disprove the self-defense claim that we've raised. And again, it didn't address at all our issue that we repeatedly raise, which is Mr. White, nothing in this record shows he had the specific intent to kill Mr. Cornelius. Once the fight, once Mr. Cornelius retreated from the fight, White did not pursue him. What does it show when an individual places a loaded gun at somebody's head? I think it shows that he's making a conditional threat, get off of me or I'm going to shoot you. Well, he fired it. He did fire it, but he did not fire it while it was at the side of Mr. Only because they were tussling. Perhaps, and it could be. I mean, I watched that video, I don't know, a dozen times or so, and slowed it down and sped it back up or whatever, so the pictures that are on the bench, I mean, I've seen those in real time, and you can see the gun discharge, and it's an inch, whatever, above his head, and the only reason is because they're just in constant motion. I think that could be another issue that shows it was no specific intent to kill. It may have discharged during the tussle on accident, but I do think— No, wait a minute. He's got his finger on the trigger, so accident, no accident, I mean, it discharged while he was holding it to the guy's head. I guess the point is, if that is a fact-finding by the district court, I see the video as showing that he intended to kill him, how is that clearly erroneous? Even if you could see the video another way? Well, I think the pictures that we did provide show that the muzzle blast of the gun is, the flame is pointing upward. It is an upward shot to get Mr. Cornelius off of him. Well, but wait a minute. That sounds like it's sort of Ma Kettle coming out of the ranch saying, get off my property, and she fires the gun in the air. That's not what happened here. This is literally one to two seconds, and they are actively fighting. The gun goes to the head, and then it goes off. So, is it less plausible that this was a warning shot or a misfire, or a missed shot? Well, I'm sorry, is the court asking misfire or gun jammed? No, no, I'm just saying, back to the original question that I had, couldn't the district court have seen this as the intent to kill him, and the shot just missed? I would say it's still clearly erroneous based on the other conduct that we see afterward. Well, but he started the fight also. The district court, didn't the district court find that he threw the first elbow? I mean, that's what the video shows. That was within the PSR, Your Honor, but I don't think the video shows that he initiated, provoked the difficulty in this case. Isn't it true that the first physical contact on the video is White throwing the elbow? That is the first physical contact with White. There was physical contact with his co-worker, Pearson, immediately before that, from Johnson. So I think Mr. White saw that, and he saw these guys are trying to harm us. You see Johnson elbowing Pearson in the chest, hitting Pearson in the forehead with the brim of his cap as he's talking at him. I mean, Mr. Johnson is, I think, the one who has initiated the contact between the four of them. Oh, but all of this we're talking about, you led with the standard of review being DeNovo. All of this is fact-finding, isn't it? It is, Your Honor. DeNovo, we are very ill-equipped to find these kinds of facts or say that the district court erred in doing so. Yes, Your Honor, but my argument is no matter what the facts are, if you totally accept the government's facts, it still shows no more than attempted manslaughter, which is not attempted murder. It's a much lower offense level than attempted murder. So even if he had the intent to kill, even if he threw the first punch and there was no self-defense, it is still no more than attempted manslaughter because this would have been an attempted killing as a result of a sudden quarrel. And so for that reason, I think it is DeNovo, and I think the government and I have gotten in the weeds about the facts, but at the end of the day, I don't think the facts matter in this case to warrant a reversal. How did the district court respond to the manslaughter argument? They did not address the manslaughter argument that I could see. And they did not address the, I don't believe he addressed the specific intent to kill either, and Was the manslaughter argument raised before the district court? Yes, Your Honor. I did find this morning, though, that it was in a filing that didn't make it into the Fifth Circuit record. With the leave of the court, I could amend and show in writing it was raised to the district court. But at the end of the day, Your Honor, we also have the 3553 issues we've raised. Can I interrupt you just to go to ask that again? Your argument seems to be very strongly that it should have been attempted if the killing had happened, it would have been manslaughter and not murder. But couldn't it have been murder? Hasn't this court held that malice aforethought as required to prove murder does not require a subjective intent to kill, but may be established by evidence of conduct, which is a reckless and wanton and a gross deviation from a reasonable standard of care? And I'm citing United States v. Shaw, Fifth Circuit case from 1983. And that would be for a murder conviction, is that correct, Your Honor? Yes, sir. And I believe that this case would be attempted murder, which would require even further that the specific intent to kill be shown. But, again, I believe that is a de novo review that this court can do. Was this a manslaughter case or was this an attempted murder case? Because that particular argument does not involve a factual dispute. We can accept the government's version of the facts and still look at it and say, was this manslaughter or was this attempted murder? And we also raised our 3553 reasonable sentence issue to the court. I'd argue that I don't think it's reasonable in this case for Mr. White to have received the same sentence as Mr. Johnson. They had a similar criminal background. Mr. Johnson, as shown in the pictures we provided to the court, is indiscriminately shooting innocent people that are just sitting out in front of the bar at this time, whereas Mr. White shot to get someone off of him and then attempted to protect his coworker, Pearson, from Johnson shooting him. And Mr. White was shot at the end of this. And Johnson escaped, received the exact same sentence as Mr. White, and we don't think that that shows an individual consideration of the facts in this case because, you know, you got one guy trying to go to work, felt like he had to take a gun to work, and was getting pummeled in a corner when he discharged a weapon, versus another guy who takes a gun, also a felon, takes a gun to a bar, starts a fight, and shoots innocent people. We don't think that that's reasonable to give those two people the same exact sentence in this case. The district court made that decision based on some unscored criminal history. Is that correct? That is what the district court said. Is there any case law out there that says that it's not within a district court's realm to do that? There is case law that says that the court may do that, but I do believe it's in the purview of this court to decide if that was true and if that was reasonable. And I think if that was true, we could assume that the facts of this case don't matter. So let's say, hypothetically, that this was the most clear self-defense case we've ever seen. And Mr. White is in his own home, somebody breaks in, takes his family hostage, he shoots at the guy, and the guy runs off. If that were the case, I don't think it's reasonable to assume the court would have given what amounts to 1,000 percent upward variance from where his guidelines could have been just because he had some cases in his 20s. At this point, he hadn't picked up a new case in almost a quarter of a century. So I think the court can decide if they actually think that that was the court's reasoning in this case. And I just don't think it is, because if he had that protecting his family type self-defense case, I don't think he gets this kind of an upward variance. But I think it's within the purview of the court to decide if they think that sentence was reasonable based on that reasoning. And if there's no further questions from the court, I'd like to reserve my final five minutes for rebuttal. You reserve time for rebuttal, counsel. Thank you, Your Honor. May it please the court, Lindsay Pryor on behalf of the United States. The court should affirm Mr. White's sentence. Clear video evidence showed White escalating a verbal argument with a bar patron into a violent fight by punching him twice in the face. Then, when that assault resulted in a counterattack, he further escalated by taking out his gun and trying to shoot that person in the head. After watching the video of this incident multiple times, the court found that White's conduct constituted attempted murder. This court should defer to that finding, which was more than plausible on this record. Any error was also harmless, and even today, counsel has made no effort to address the government's harmlessness argument. The court made abundantly clear in its analysis of the statutory sentencing factors that it did not think a guideline sentence was sufficient and that a statutory maximum sentence was warranted. I will start by addressing the arguments that he made in his supplemental brief on self-defense. I mean, I'm going to just understand that harmless error is that whether the district court had applied the cross-reference, he enunciated the 3553 factors for giving an upward variance and giving the 120-month sentence. Is that your argument? That's exactly right, Your Honor. The court made clear, based on the 3553A factors, specifically Mr. White's violent criminal history, which was underrepresented by his criminal history score, the need to avoid a sentencing disparity with his co-defendant, who he believed was equally culpable in this case, and the just uniquely dangerous facts of his conduct here warranted a 120-month sentence. The court made clear in its analysis of the sentencing factors, and then it also made explicit harmlessness findings on the record and in a statement of reasons. So — Back to the cross-reference, I mean, counsel says that our review is de novo. What do you say the standard of review is? It is clear error, Your Honor. It is not correct that this is a de novo case. There are two places in his brief that underscore and summarize his argument that he's raising a factual challenge to the court's finding of intent. He says the evidence overwhelmingly demonstrates that he did not want to kill Mr. Cornelius. It's at page 16 of his brief. And then he says the court's finding that White had a specific intent to kill when he fired a warning shot into the air is completely unfounded. Those are — that is directly challenging the district court's factual findings here. And as you said, the — he cannot show that those fact findings were clearly erroneous. On the self-defense point — Before we get to self-defense, it seems that your friend on the other side has — one of the main arguments was that this was, if anything, an attempted manslaughter and not attempted murder. How do you respond to that? He did not make that argument below. It's not clear in the sentencing transcript that he — that he made that argument at all. I believe what he's referring to is his — he did raise a self-defense claim. So if you look at ROA 187 to 190, that's the relevant pages of the sentencing transcript here. He argued that he felt he had to protect himself because they were making — that Johnson and Cornelius had been making verbal threats. He said they had been getting in his face and speaking to him in an agitated manner. So he might be referring to his claim of self-defense, but no, he didn't argue that this was manslaughter. And the court's finding that it was attempted murder was, again, more than plausible here because the clear video evidence showed that Mr. White took out his gun, put it to Mr. Cornelius' head, and pulled the trigger. So that shows an intent to kill, and that kind of constituted attempted murder. And we cite multiple cases in our brief showing that it is well-established that shooting directly at someone shows an intent to kill, particularly Bell, the case we cite in our 28J letter. The court found no clear error on a finding of specific intent to kill where the defendant was shooting in the general direction of his girlfriend. So it is certainly not clearly erroneous on this record for the court to find that his conduct — What case is that again? I'm sorry. Bell, which we cited in our 28J. It's an unpublished case from this last year. Is that a — but that is a — is that a murder case or an attempted murder? It is an attempted murder case. The court applied the cross-reference to attempted first-degree murder in that case. And this case is attempted second-degree murder. On self-defense, he cannot meet at least two of the elements that this court set out in Santiago. So he can't meet his burden of production to show, first, the second element, that he had not recklessly placed himself in a situation that he would have to choose criminal conduct. So he's trying to do exactly what this court said in Santiago you cannot do, which is provoke a fight and then rely on a claim of self-defense. And by provoke, you mean turning the verbal altercation into a physical altercation? That's right, Your Honor. And his argument is based on a police report. It's in ROA 244, 245 of the record, where he said he's relying on statements his — the other security guard involved in the incident, Mr. Pearson, made saying that White and Johnson were making verbal threats, that they were getting in their face. He's reiterated that version of the facts again today. But that same police report said that that version of the facts was not supported by the video. And it says that White, quote, for no obvious reason, hit Mr. Cornelius in the face. So that version of the facts is not supported by the evidence. Mr. White was the aggressor and the escalator throughout the entire incident, so he cannot meet that second element. He also cannot show that he had no reasonable legal alternative to violating the law. He had alternatives to escalating the entire time throughout the incident. At every point, he chose to escalate this from the time that he approached the patrons and asked them to leave, to the time that he threw a punch, to the time that he took out — when he took out his gun and tried to shoot him. So his argument that he was trying to protect himself by making a preemptive strike, that just doesn't show that he had no other option. That is admitting that he had other options, and that is borne out by the video. He also ignores the fact in his brief that the district court did find that his conduct was justified. And that wasn't a vague comment, like he says — like he said today. That was a finding that the district court made in direct response to the self-defense claim that he raised. He said, the evidence shows that Mr. White was justified because of the bar patron's conduct, and the court said, I've watched the video a number of times, and I find that that conduct was not justified. So unlike in Santiago, where there was no finding of fact on a self-defense claim, there was here. So White did not meet his burden on self-defense, and even if he did, the district court found that his conduct was not justified. I also will note that any error was harmless, as I did previously. His unique personal background, the court found it underrepresented his criminal history. And so the court made abundantly clear in its analysis of the factors that the statutory maximum sentence was warranted here. I will answer any questions the court has about his substantive, reasonable argument, but otherwise we'll rest on our briefs. Opposing counsel, in the briefing, cites to Braxton versus the United States for the assertion that the attempted murder requires proof of the specific intent to kill. What is your response to that argument? This court has not applied Braxton to the cross-reference for attempted murder. So Braxton addressed what is required to prove a criminal conviction for attempting to murder a federal official. And this court has said that Braxton does not control on the cross-reference and has said, albeit in an unpublished case, that the attempted murder cross-reference does not require a specific intent to kill and has used the malice of forethought standard in the federal murder statute. So what does that require? What is the citation for the case that you mentioned saying that Braxton does not apply in this situation? The court said, so there's Villanueva, which we cite in our brief, is where the court has said that specific intent to kill is not required. And then there is a case called Jackson and the citation— Does Villanueva predate the Braxton decision? No, it's after.  So which case do you have to say that Braxton does not apply in this situation? The court has directly said that Braxton does not control on the cross-reference point in a case called Jackson, another unpublished case from the past few years. So the citation there is 852-162, and that's from 2021. So those are unpublished cases. There are cases that have—there are circuits that have applied Braxton to the cross-reference, to the attempted murder cross-reference. I do want to make clear that he is not raising that issue here. This case doesn't—he's not arguing that the district court applied the wrong mental state here. He has squarely presented a factual challenge to the court's finding on intent to kill. So this court has unpublished case law on the mental state regarding attempted murder, but that—this case does not present the question before the court on that. If that is a question of law, is that something that this court should take up on its own, whether counsel raised it or not? It's not—that's not an issue that he raised, and it's not an issue that we have briefed. He's not arguing that the court relied on—that malice of forethought was the improper standard. He didn't make that argument below. So no, I don't think that it is—it is presented here. If the court does say that specific intent to kill is required and did make that determination, it would clearly be met here based on Mr. White's conduct, trying to shoot someone in the head. Thank you, counsel. Thank you. And we would ask the court to affirm. Counsel, you've reserved time for rebuttal. Your Honors, I don't know why the government is saying I haven't asserted that specific intent is required to apply this cross-reference. I've said it repeatedly in my briefs to the trial court and here today. I do think we've raised that issue. And with regard to all of their case law that says, you know, this scenario was—shows specific intent to kill and this scenario was attempted murder, they all involve somebody shooting a gun at someone in someone's direction. Now, if that had happened in this case at the range Mr. White and Mr. Cornelius were at, he would have hit Mr. Cornelius. So, I don't think any of those are analogous to this case. You know, these are people shooting, fleeing people, people shooting, people driving away. It's just not similar cases to the case in front of the court today. And with regard to the harm argument, you know, the district court— I do think she's right, though, that I don't see—I have read through the transcript several times and I don't see any reference to manslaughter. It even comes with a nice index and the word manslaughter is not listed in the index anywhere either from the sentencing transcript. Yes, Your Honor. And like I said this morning, I realize it wasn't a filing that did not make it into the— But was it brought up at the sentencing hearing? Was that objection lodged? I don't see it anywhere in the transcript. Not verbally, Your Honor. It was discussed when discussing the same case provided in our brief to this court, the Jackson case that we cited with regard to the bodyguard getting in a shootout and the court did a big analysis on, well, if anything, this was manslaughter. And that was shown to the court. It just did not make it into the record. I apologize for that. But with regard to harm— Would that even be enough to preserve the issue? I believe it would, Your Honor. I think there's case law saying that once you've lodged the issue in writing, you don't necessarily have to bring it up later orally to preserve it. That's an important argument, right? Yes, Your Honor. And so it doesn't go mentioned in the sentencing hearing, but we're going to impliedly raise it and preserve it? Well, I believe it was shown to the court. And the crux of our objection is just that this was not attempted murder. That's what we raised to the court. This could not be attempted murder. We raised in our memorandum that it could be any one of these other things. But at the end of the day, our argument was this was not attempted murder, even under the government's facts. And with regard to the harm argument, I believe the government referenced the statement of reasons where the court said that if this case were sent back and reversed, I would make the same determination due to the criminal history. I think, again, it's within the purview of the court to decide if that's a reasonable thing to say. And I know in our district, they say that after every single sentence they give, and I haven't believed it yet. They don't even know what the issue is. They're saying, well, let's say the Fifth Circuit told me I've given an unreasonable sentence. I'm telling them I'm going to give an unreasonable sentence again in a different way. I mean, I just don't think that that blanket statement inoculates the sentence. I think this court still has the ability to look at the reasonableness of the sentence. And again, in this case, we're talking about a thousand percent upward variance from the level 14 that I think either the felon with a firearm guidelines would be or the base offense level for attempted manslaughter. It was just a very big variance for a guy who had not had a case based on criminal history but had not picked up a charge in 22 years, I believe. And this case was picked up at his job. He's trying to do his job. I think he felt he needed a gun. And I think we saw some evidence of that in one of the facts the government tried to allege that we showed the trial court that it wasn't true, that Mr. White fired twice. Well, we gave a lab report to the court that said this examination showed it could not have come from the same gun. And we see it on the video when Mr. Johnson's leaving. Some party not even involved in the case tries to shoot Mr. Johnson on the way out. So I think that goes to show that's why Mr. White thought he needed to take a gun to work. At this particular place of employment. And I think these things were also in his head when he's being confronted by Mr. Cornelius and Mr. Johnson. And I see that I'm out of time, Your Honor. Thank you, Counsel.